(No. 1586, January 12, 1914.)

MARY BELLE WHITEHILL, Appellee, v. VICTORIO LAND & CATTLE COMPANY, Appellant.

SYLLABUS (BY THE COURT)

1. An attempted exercise of jurisdiction by the land department in the acceptance of an entry, including lands reserved from entry by the government, where the reservation from entry appears as a matter of record in the land office, is void, as to the lands reserved, for the reason that it is an assumption of power in excess of its jurisdiction, and the same can be shown by a defendant in an action at law.

P. 531

Appeal from the District Court of Luna County; Colin Neblett, District Judge; reversed and new trial granted.

WILSON & WALTON, Silver City, N. M., for appellant.

Court erred in refusing to instruct the jury that plaintiff could not recover for injuries to that portion of the land covered by plaintiff's desert entry which was cancelled  Scott v. Carew, 196 U. S. 100; Doolan v. Carr, 125 U. S. 618; Burfenning v. Chicago, etc., Ry. Co., 163 U. S. 321; Morton v. Nebraska, 21 Wall. 660; Lake Superior, etc., Co. v. Cunningham, 155 U. S. 354; Grisar v. McDowell, 6 Wall. 363; Kraus v. Congdon, 161 Fed. Rep. 18.

JAMES S. FIELDER, Deming, N. M., for appellee.

Fencing of lands. Session Laws 1909, chap. 70.

Fencing laws have no application where cattle are driven upon unfenced land in order that they may feed there. Light v. United States, 220 U. S. 537; Lazarus v. Phelps, 152 U. S. 81; Monroe v. Cannon, 24 Mont. 316; St. Louis Cattle Co. v. Vaught, 1 Tex. App. 388; Union Pac v. Rollins, 5 Kans. 165.

The granting or refusal of a motion for new trial, being addressed to the sound discretion of the trial court, will not, unless it plainly appears that such discretion has been abused, be reviewed on appeal. Duncan v. Holder, 15 N. M. 323.

Appellate court will not disturb a verdict where there is substantial evidence to support it. Territory v. Clark, 13 N. M. 353.

An entry of land, valid upon its face, constitutes such an appropriation and withdrawal of the land as to segregate it from the Public Domain, and appropriate it to private use; and even though the entry may be in fact invalid, no lawful entry or settlement can be made on the land by another person. 32 Cyc. 808, et seq.; Holy v. Murphy, 207 U. S. 407; McMichael v. United States, 197 U. S. 304; 32 Cyc. 818; U. S. v. Waddell, 112 U. S. 76;

Stearns v. U. S., 152 Fed. 900; Wormouth v. Gardner, 105 Cal. 149; Hodges v. Colcord, 12 Okla. 313.

Until the entryman has become entitled to a patent, he has no vested rights in the land as against the United States, such as will deprive Congress of the right to dispose of the land otherwise than by a patent to him. 32 Cyc. 817: Campbell v. Wade, 132 U. S. 34.

As against defendant, plaintiff's title was perfect at the time of the trespass committed by defendant. Holt v. Murphy. 207 U. S. 407; McMichael v. Murphy, 197 U. S. 304; Hartman v. Warren, 70 Fed. 946; Germania Iron Co. v. James, 89 Fed. 811.

### STATEMENT OF FACTS.

This was an action brought by Mary Belle Whitehill, appellee, against the Victorio Land & Cattle Company, appellant, in the District Court of Luna County, for the recovery of damages for trespass by cattle upon certain lands claimed by appellee, in Grant County, under a desert land entry. The desert entry being for the Southeast Quarter of the Northwest Quarter, and the Southeast Quarter of Section Twelve, in Township Twenty, South of Range Twelve West, and Lots numbered Three and Four in Section Seven, and Lot numbered One in Section Eighteen, in Township Twenty South, Range Eleven West, (being 318.25 acres.)

The complaint alleged residence of the plaintiff, corporate capacity, domicile and place of business of the defendant, and appellant herein, and further alleged possession of the lands described by plaintiff; that the defendant between July 20 and August 4, 1911, did wrongfully and without right or authority and against the will and protest of the plaintiff, cause and allow a large number of its cattle to go upon the lands described, and tread down, eat and destroy grass then growing thereon, to the damage of the plaintiff in the sum of $3200, for which she prayed judgment.

The defendant, appellant here, answering, denied knowledge or information, sufficient to form a belief, as to the ownership and right to the possession in plaintiff of

the lands described, and denial of the trespass alleged; and further answering, set up that the lands were unfenced, that the defendant had no knowledge of plaintiff's claim to the land, and was the owner of a large number of cattle then ranging upon the public domain of the United States. Plaintiff, by way of reply, denied all new matter in the defendant's answer.

The cause being tried to a jury, resulted in a verdict for plaintiff, assessing her damages at $1591.25.

The testimony showed that on May 6, 1911, plaintiff, Mary Belle Whitehill, filed her desert entry declaration in the United States Land Office, at Las Cruces, New Mexico, for the land within described, at which time a portion of said land, to-wit: the Northeast Quarter of the Northeast Quarter, being lot One in Section Eighteen, Township Twenty South, Range Eleven West, had been reserved by the government of the United States, for which reason this portion of the desert land entry was subsequently cancelled by letter of October 17, 1911. The trespass complained of in the complaint, and for which damages was sought according to the testimony, occurred between the 20th day of July and the 4th day of August, 1911.

## OPINION OF THE COURT.

HANNA, J.—The first error assigned and presented for the consideration of this Court is based upon a refusal of the District Court to instruct the jury that plaintiff could not recover for injuries to that portion of the land, covered by plaintiff's desert entry, which was subsequently cancelled. It appears from the record that, prior to the time when plaintiff filed her desert land entry declaration in the local land office, a forty-acre tract included in her entry had been reserved from entry by the government. Subsequent to her entry, plaintiff was cited to show cause why that portion of her entry should not be cancelled, and failing to make a showing, the entry was cancelled as to the forty acres in question, but not until after the trespass complained of in this action.

It is contended by the appellant that the sub-division

of plaintiff's entry not being subject to entry, the receiving and allowing of entry by officers of the local land office was without authority, and, therefore, void.

On the other hand, appellee contends that an entry of land valid on its face, constitutes such an appropriation and withdrawal of the land as to segregate it from the public domain, and appropriate it to private use; and even though the entry may be in fact invalid, no lawful entry or settlement can be made on the land by another person.

With this contention we agree, and we find the principle supported by the following well considered authorities: James v. Ger. Iron Co., 107 Fed. 597; Hasting & Etc. Railroad Co. v. Whitney, 132 U. S. 357; Parsons v. Venzke, 164 U. S. 89; Hodges v. Colcord, 193 U. S. 192; McMichael v. Murphy; 197 U. S. 304; Holt v. Murphy, 207 U. S. 407.

We do not overlook appellant's contention that the rule, referred to, is applicable only to cases where the entries or filings are valid when made, or at least are only voidable by reason of facts not apparent upon the records; and, that, in the case under present consideration, the same records by which were proved the making of the entry showed a portion of the land included therein had been theretofore reserved, for which reason the land was not subject to entry and as to the portion reserved the entry was void.

The record in this case is not clear as to the character of reservation, or withdrawal from entry, which the subdivision of land included within the desert entry had been subjected to.

The language is that the land had been reserved from entry by the government of the United States. We are not to consider the question as one arising between the government and the entryman, but as affecting the status of the entry at the time of the alleged trespass by appellant. It would seem to turn upon the point of whether a portion of the entry was void or only voidable, by reason of the pre-existing reservation. It is apparent that the officials of the land office have, in the matter of the cancellation of that portion of the entry cancelled, pur-

sued a course which it may be argued recognized the entry as one of prima facie validity. The withdrawal of the land was a fact peculiarly within the knowledge of the officials of the land office. The fact that the officers of the land office were in error in overlooking an order of withdrawal of the land from entry, would not, as a matter of first impression, make the entry void, but rather voidable, upon the question being raised by the party entitled to raise it, i. e., the government.

The cases cited, supra, are those where latent defects exist. The entry being so far as could be known, at the time of its making, prima facie valid, but investigation subsequently developing that the entryman was disqualified to make the entry, or had perpetrated fraud, conditions to be discovered by evidence dehors the record, and being essentially questions of fact.

It has long been settled that as to matters of fact, within the scope of the authority of the officers of the Land Department of the United States, their findings must be taken as conclusive in the absence of fraud and mistake, upon the principle of estoppel by former adjudication. Johnson v. Towsley, 13 Wall. 72; Moore v. Robbins, 96 U. S. 530. Smelting Co. v. Kemp, 104 U. S. 936; Sanford v. Sanford, 19 Or. 3, 13 Pac. 602.

If the reservation of the land in question from entry is a question of fact to be determined by the land officials, then the District Court would be concluded by the findings of the officials, as evidenced by the acceptance of the entry, and no error could now be predicated upon the refusal of that court to instruct the jury that plaintiff could not recover for injuries to that portion of the land reserved from entry.

If the reservation from entry, however, deprived the officials of all jurisdiction over the land, and left them devoid of authority to consider a filing upon the land reserved, then the acceptance of the entry would be without jurisdiction and absolutely void, all of which could be inquired into in an action at law.

No cases in point have been cited, nor have we been able to find any, where the facts were analogous to those

now before us. Appellant has cited the case of Burfenning v. Chicago, St. P., etc., Ry. Co., 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 176, where the United States Supreme Court, speaking by Mr. Justice Brewer, said:

"It has undoubtedly been affirmed over and over again that in the administration of the public land system of the United States questions of fact are for the consideration and judgment of the land department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the Land Department, one way or the other, in reference to these questions is conclusive and not open to relitigation in the courts, except in those cases of fraud, etc., which permit any determination to be re-examined. Johnson v. Towsley, 13 Wall. 72; Smelting Company v. Kemp, 104 U. S. 636; Steel v. Smelting Company, 106 U. S. 447; Wright v. Roseberry, 121 U. S. 488; Heath v. Wallace, 138 U. S. 573; McCormick v. Hayes, 159 U. S. 332.

"But it is also equally true that when by Act of Congress a tract of land has been reserved from homestead and pre-emption, or dedicated to any special purpose, proceedings in the Land Department in defiance of such reservation or dedication, although culminating in a patent, transfer no title, and may be challenged in an action at law. In other words, the action of the Land Department cannot override the expressed will of Congress, or convey away public lands in disregard or defiance thereof. Smelting Co. v. Kemp, 104 U. S. 636-646; Wright v. Roseberry, 121 U. S. 488, 519; Doolan v. Carr, 125 U. S. 618; Davis' Admr. v. Weibbold, 139 U. S. 507, 529; Knight v. U. S. Land Assn., 142 U. S. 161."

It is to be noted that the illustrations given of the rule by Mr. Justice Brewer, were specifically limited to cases not presenting facts resting on record, which is not a condition in the present case, the records of the land office, in this instance, showing a reservation.. Were the present case one where a reservation had been made by Act of

Congress, there would be no question but the authorities last cited would be analogous and controlling upon this Court. What distinction can there be, however, as a matter of principle, between a reservation from homestead of certain lands by Act of Congress and a reservation from entry of lands by executive proclamation or departmental withdrawal? Is not the jurisdiction of the Land Department as effectively cut off in the one case as in the other?

In the case of the New Dunderberg Min. Co. v. Old, 79 Fed. 602, speaking of the jurisdiction of the Land Department, the Court said:

"Jurisdiction of the subject matter is the power to deal with the general abstract question. The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry, not whether its conclusion in the course of it is right or wrong."

Our inquiry is thus limited to the question of the power of the local land office officials to accept and give validity to an entry upon lands reserved from entry by the government, where the reservation is shown upon the records of the land office. A case more nearly in point than all others we have examined, is Morton v. Nebraska, 21 Wall. 660, cited in the Burfenning case, where the facts disclose that patent had issued for saline lands, noted as such on the field books, although the notes thereof had not been transferred to the register's general plats. It is true that known salines were reserved from entry by Act of Congress, but the character of the land was a matter of record in the land office as the fact of the reservation in this case was a matter of the record.

The Supreme Court said in the case last cited, (Morton v. Neb.),

"It does not strengthen the case of the plaintiffs that they obtained certificates of entry, and that patents were subsequently issued on these certificates. It has been repeatedly decided by this Court that patents for lands which have been previously granted, reserved for sale, or appropriated, are void. The executive officers had no authority to issue a patent for the lands in controversy, because they were not subject to entry, having been previously reserved,

and this want of power may be proved by a defendant in an action at law."

The Supreme Court of the United States, in the Burfenning case, supra, said, in commenting on the Morton v. Neb. case:

"It will be observed that the records disclosed that the lands were saline lands when the proceedings in the Land Department were had. So the case was not one in which the department determined a fact upon parol evidence, but one in which it acted in disregard of an established and recorded fact."

Thus it is to be observed that if the decision as to whether lands were salines rested upon parol evidence the first principle and rule should apply and the conclusion of the land officers would be final, whereas if the character of the lands had been determined and was disclosed by the record there would be a failure of jurisdiction and a want of power which might be proved by a defendant in an action at law.

In another case, Davis' Administrator v. Weibbold, 139 U. S. 507-529, we find an expression of opinion by Mr. Justice Field as to the conclusiveness of the patents of the Land Department when assailed collaterally in actions at law. Justice Field said:

"We have had occasion to assert their unassailability in such cases in the strongest terms, both in Smelting Co. v. Kemp, 104 U. S. 636, 640-646, and in Steel v. Smelting Co., 106 U. S. 447, 451, 452. They are conclusive in such actions of all matters of fact necessary to their issue, where the department had jurisdiction to act upon such matters, and to determine them; but if the lands patented were not at the time public property, having been previously disposed of, or no provision had been made for their sale, or other disposition, or they had been reserved from sale, the department had no jurisdiction to transfer the land, and their attempted conveyance by patent is inoperative and void, no matter with what seeming regularity the forms of law have been observed." See, also, Knight v. U. S. Land Ass'n, 142 U. S. 161-176.

While it is true we are not concerned with a patent, in

this case, we do not consider that an entry can be held to have any greater validity than would a patent which might be subsequently issued and based upon such entry.

Judge Sanborn, in the case of United States v. Winona & St. P. R. Co., 67 Fed. 948, 959, after reviewing numerous authorities illustrating the distinction between the case in which the Land Department has acted upon a subject matter within and one without its jurisdictioon, said:

"A careful study and analysis of these decisions will show that none of them are inconsistent with the following rules: (1) A patent or certificate of the land department to land, over which that department has no power of disposition and no jurisdiction to determine the claims of applicants for, under the acts of Congress, is absolutely void, and conveys no title whatever. Land the title to which had passed from the government to another party before the claim on which the patent was based was initiated, land reserved from sale and disposition for military and other like purposes, land reserved by a claim under a Mexican or Spanish grant *sub judice,* and land for the disposition of which the acts of Congress have made no provision, is of this character. Polk v. Wendal, 9 Cranch. 87, and cases cited under it supra. (2) A patent or certificate of the Land Department to land over which that department has the power of disposition and the jurisdiction to determine the claims of applicants for, under the Acts of Congress, is impregnable to collateral attack, whether the decision of the department is right or wrong, and it conveys the legal title to the patentee or to the party named as entitled to that title in the patent or certificate. Minter v. Crommelin, 18 How. 87, 89, and cases cited under it supra. (3) A court of equity may, in a direct proceeding for that purpose, set aside such a patent or certificate, or declare the legal title under it to be held in trust for one who has a better right to it, in cases in which the action of the Land Department has resulted from fraud, mistake, or erroneous views of the law. Bogan v. Mortgage Co., 11 C. C. A. 128, 63 Fed. 192, 195; Cunningham v. Ashley, 14 How. 377; Barnard's Heirs v. Ashley's Heirs, 18 How. 43; Garland v. Winn, 20 How. 6;

Lytle v. State, 22 How. 193; Lindsey v. Hawes, 2 Blank 554, 562; Johnson v. Towsley, 13 Wall. 72, 85; Moore v. Robbins, 96 U. S. 538; Bernier v. Bernier, 147 U. S. 242, 13 Sup. Ct. 244; Mullan v. U. S., 118 U. S. 271, 278, 279, 6 Sup. Ct. 1041; Moffat v. U. S., 112 U. S. 24, 5 Sup. Ct. 10."

The question now under consideration was referred to by Mr. Justice Field in Smelting Co. v. Kemp, 104 U. S. 636, at 641, where he said:

"Of course, when we speak of the conclusive presumptions attending a patent for lands, we assume that it was issued in a case where the department had jurisdiction to act and execute it; that is to say, in a case where the lands belonged to the United States, and provision had been made by law for their sale. If they never were public property, or had previously been disposed of, or if Congress had made no provision for their sale, or had reserved them, the department would have no jurisdiction to transfer them, and its attempted conveyance of them would be inoperative and void, no matter with what seeming regularity the forms of law have been observed. The action of the department would in that event be like that of any other special tribunal not having jurisdiction of a case which it had assumed to decide. Matters of this kind, disclosing a want of jurisdiction, may be considered by a court of law. In such cases the objection to the patent reaches beyond the action of the special tribunal, and goes to the existence of a subject upon which it was competent to act."

In a proceeding, entitled "John Campbell," before the Secretary of the Interior, (6 L. Dec. 317), it was held that

"The President is vested with general authority in the matter of reserving land for public uses, and land so set apart is not subject to disposition under the public land laws during the existence of such reservation." See also John C. Irwin, 6 L. D. 585.

It is a settled rule of decision in the Federal courts that so long as an executive withdrawal of public lands continues in force, the lands covered thereby are not subject

Ranch & Cattle Co. v. Board of Equalization, 18 N. M. 531.

to entry, and no lawful settlement on them can be ac-quired. Wolsey v. Chapman, 101 U. S. 768; Bullard v. Railroad, 122 U. S. 167; Spencer v. McDougal, 159 U. S. 62.

In conclusion, therefore, we are of the opinion that an attempted exercise of jurisdiction by the Land De-partment in the acceptance of an entry, including lands reserved from entry by the government, where the reservation from entry appears as a matter of record in the land office, is void, as to the lands reserved, for the reason that it. is an assumption of power in excess of its jurisdiction, and the same can be shown by a defend-ant in an action at law.

We conclude that the District Court committed error in refusing the instruction asked by appellant. Our con-clusion makes it unnecessary to pass upon the remaining assignment of errors.

The judgment of the lower court is, therefore, reversed, and a new trial granted.

#### SYLLABUS (BY THE COURT)

